***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Stanback with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. An Opinion and Award for the Full Commission by Coy M. Vance was filed in this matter on February 22, 1994 determining plaintiff's injury to her neck to be compensable, and awarding temporary total disability benefits in the amount of $131.65 per week, subject to counsel fees.
2. Plaintiff has received such benefits since February 22, 1994 up to the present and continuing.
3. The following documents were admitted into the record at the hearing before the Deputy Commissioner:
 a. Stipulated Exhibit 1 — Pre-Trial Agreement;
 b. Stipulated Exhibit 2 — I.C. Forms and medical records;
 c. Stipulated Exhibit 3 — an April 29, 1992 report from Dr. Paul
 d. Plaintiff's Exhibit 1 — prescription and travel reimbursement forms;
 e. Defendants' Exhibit 1 — plaintiff's discovery responses; and
 f. Defendants' Exhibit 2 — a letter from plaintiff's parole officer.
4. Following the evidentiary hearing, the depositions of Dr. Hans C. Hansen and Dr. Stephen S. Hsieh were taken and the transcripts of these depositions have been admitted into the record.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT *Page 3 
1. On April 4, 1989, plaintiff sustained a compensable injury by accident to her cervical spine. On February 22, 1994 the Full Commission filed an Opinion and Award which awarded plaintiff temporary total disability benefits from June 5, 1991 and continuing in the amount of $131.65 per week, subject to counsel fees, as well as, ongoing medical treatment for her compensable cervical spine injury. Plaintiff continues to receive temporary total disability benefits and medical treatment for her cervical spine injury.
2. Ultimately, plaintiff came under the care of Dr. William Spillane at Wake Forest Baptist Pain Control Clinic for treatment of her cervical spine condition. Dr. Spillane announced that his practice at Wake Forest Baptist Hospital was closing at the end of April 2004.
3. Plaintiff thereafter filed a Motion on March 22, 2004 seeking an Order to see a neurosurgeon. On April 6, 2004, Special Deputy Commissioner Robert J. Harris filed an Order directing plaintiff to undergo an Independent Medical Examination by Dr. O. Del Curling, Jr.
4. The evaluation with Dr. Curling took place on April 15, 2004. Dr. Curling noted that surgery to the cervical spine was not indicated and, since he felt other modalities had not been proven to be effective, he recommended that she continue with medical pain management. Dr. Curling also noted that the issue of the causal relationship of plaintiff's low back pain to the original workers' compensation injury was unclear.
4. Plaintiff relocated to Love Valley, Iredell County. Accordingly, care was directed to Dr. Hans C. Hansen, who first saw plaintiff on June 7, 2004 on referral from Dr. Spillane. Dr. Hansen is board certified in anesthesiology and pain management.
5. Immediately Dr. Hansen was concerned about the course of pain management for plaintiff with regard to the amount of, and interaction between, the medications plaintiff was taking, including narcotic pain medication. It also became evident that there were serious *Page 4 
concerns that plaintiff was obtaining prescriptions from multiple providers and was filling these prescriptions at multiple pharmacies. Dr. Hansen was concerned about the possibility of overdose, misuse or diversion of these controlled substances.
6. On or about September 22, 2004, Dr. Hansen recommended plaintiff be detoxified in an in-patient facility and that her continued medical treatment be managed by a qualified pain management specialist.
7. Plaintiff refused to participate in this recommended course of medical treatment set forth by the authorized treating physician, Dr. Hansen. Instead, she presented to an internist, Dr. Stephen S. Hsieh, and thereafter obtained prescription narcotic medications for the next several years. Plaintiff was aware that her treatment with Dr. Hsieh had not been authorized by defendants.
8. According to plaintiff's own request for reimbursement, she also continued to obtain narcotic pain medications from at least two other sources, Dr. Roy in 2004 and 2005 and Dr. Riggin in 2007.
9. In addition, in 2006, plaintiff was convicted in Iredell County of trafficking in opium/heroin and possession with intent to sell and distribute cocaine. As a result, she was sentenced to house arrest from January to July 2007.
10. According to the records of Dr. Hsieh, plaintiff signed a pain management agreement on July 16, 2004, in which she agreed that she would not use illegal controlled substances, nor would she attempt to obtain any controlled medications, including opioid pain medicines, from any other physician. The behavior of the sort plaintiff engaged in as described above would be a breach of her pain management contract with Dr. Hsieh. *Page 5 
11. At the time of his deposition, Dr. Hsieh was no longer capable or comfortable in continuing to manage plaintiff's pain control.
12. Dr. Hansen has indicated that after an in-patient detoxification, he would still be willing to work with plaintiff as her primary pain management physician.
13. Dr. Hsieh agreed that it would be important for any subsequent prescribing physician, pain management or otherwise, to know about potential evidence of diversion, multi-prescribing, multi-dispensing and illicit drug use in a patient such as plaintiff.
14. There is insufficient evidence to prove that plaintiff's low back condition is causally related to her injury by accident of April 4, 1989.
15. At the hearing before the Deputy Commissioner, plaintiff agreed she would attend an Independent Psychological Examination by Dr. Warren, which is reasonably necessary to effect a cure, provide relief, and/or lessen plaintiff's period of disability.
16. Most of the travel, prescription and other reimbursements sought by plaintiff are for treatment that was unauthorized, namely that with Dr. Hsieh and Dr. Roy. Additionally, some of the requested reimbursements are for treatment rendered for her low back. An exception is all expenses related to plaintiff's treatment with Dr. Gulley, who was an authorized treating provider.
17. Plaintiff did not request approval from the Industrial Commission for the unauthorized medical treatment she began receiving in 2004 until she filed a Request for Hearing in April 2007. This request was not made within a reasonable time.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following: *Page 6 
 CONCLUSIONS OF LAW
1. Plaintiff's low back condition and surgery by Dr. Roy in 2004 is not causally related to her injury by accident. N.C. Gen. Stat. § 97-2;Click v. Pilot Freight Carriers, Inc., 300 N.C. 164, 265 S.E.2d 389
(1980).
2. Plaintiff is entitled to additional medical treatment so long as it tends to effect a cure, provide relief, or lessen the period of disability, including treatment with either Dr. Hansen or, should he refuse as some point in the future to treat plaintiff, another board-certified pain management specialist to be chosen by defendants. N.C. Gen. Stat. § 97-25; See Watkins v. City of Asheville,99 N.C. App. 302, 392 S.E.2d 754 (1990).
3. Plaintiff's request for medical treatment provided by Dr. Hsieh and Dr. Roy to be paid for by the defendants is not timely. N.C. Gen. Stat. § 97-25.
4. Plaintiff's requests for reimbursement for travel and prescription expenses incurred by plaintiff for treatment with Dr. Gulley, an authorized treating provider, is medical compensation to which the plaintiff is entitled, and the same should be paid by defendants. N.C. Gen. Stat. §§ 97-2 and 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for benefits for her low back condition is denied. Therefore, plaintiff's request for a consultation with Dr. Roy is also denied.
2. Plaintiff's request for pain management by Dr. Hsieh is denied. *Page 7 
3. Dr. Hansen is hereby authorized as plaintiff's treating physician or, if Dr. Hansen refuses to treat plaintiff, defendants shall select a board-certified pain management physician to resume plaintiff's care. Prior to the first appointment, defendants shall provide this pain management specialist, whether Dr. Hansen or another selected physician, with a copy of all medical records admitted into evidence, as well as the transcripts of the depositions of Dr. Hansen and Dr. Hsieh.
4. Defendants shall reimburse plaintiff for travel and prescription expenses incurred by plaintiff for treatment with Dr. Gulley. However, plaintiff's request for reimbursement of any other travel, prescription or other expenses is denied
5. It is HEREBY ORDERED that should Dr. Hansen, or some other chosen authorized treating physician, recommend plaintiff participate in an in-patient detoxification program, plaintiff shall comply. The refusal of the plaintiff to accept this treatment shall bar plaintiff from further compensation until such refusal ceases, and no compensation shall at any time be paid for the period of suspension unless in the opinion of the Industrial Commission the circumstances justified the refusal.
6. It is HEREBY ORDERED that plaintiff shall attend an Independent Psychological Examination with Dr. Warren. The refusal of the plaintiff to accept this treatment shall bar plaintiff from further compensation until such refusal ceases, and no compensation shall at any time be paid for the period of suspension unless in the opinion of the Industrial Commission the circumstances justified the refusal.
7. Defendants shall bear the costs.
This the 25th day of February 2009. *Page 8 
S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 1